UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRAIG PUKANECZ,<br>    Plaintiff, | :<br>:<br>: |
| v. | : No. 5:22-cv-00327 |
| | : |
| TARGET CORPORATION, KIMCO<br>REALTY CORPORATION, and<br>ADVANCED SERVICE SOLUTIONS,<br>    Defendants. | :<br>:<br>:<br>: |

**O P I N I O N**

**Target Corporation's Motion for Summary Judgment, ECF No. 36 – Granted**
**Kimco Realty Corporation's Motion for Summary Judgment, ECF No. 37 – Denied**

**Joseph F. Leeson, Jr.**                                                                                              **September 1, 2022**
**United States District Judge**

**I.    INTRODUCTION**

 This matter involves injuries to Plaintiff Craig Pukanecz that resulted from a slip and fall in the parking lot outside of a storefront leased by Defendant Target Corporation. Pukanecz alleges that Target, Defendant Kimco Realty Corporation, and Defendant Advanced Services Solutions bore a responsibility to maintain the parking lot and that Defendants breached that duty by maintaining an icy parking lot, which led to Pukanecz's slip and fall.

Following the close of fact discovery, Defendants Target and Kimco Realty filed the present motions for summary judgment. After a review of the record and briefing, and for the reasons set forth below, this Court grants Target's motion for summary judgment and denies Kimco Realty's motion for summary judgment.

## II. PROCEDURAL HISTORY

On January 3, 2022, Pukanecz filed the instant matter in the Court of Common Pleas in Philadelphia County against Target, Kimco Realty, and Serenity Property Services, LLC. *See* Not. of Removal ¶ 5, ECF No. 1. On January 27, 2022, Target removed the instant matter to this Court. *See generally id.* Defendants Kimco Realty and Target filed Answers to the Complaint on January 27, 2022 and January 31, 2022, respectively. At that time, Kimco also filed a Third-Party Complaint against Advanced Service Solutions. *See* TP Compl., ECF No. 6. On March 2, 2022, Defendant Serenity Property Services was dismissed for lack of personal jurisdiction. *See* ECF Nos. 19, 20.

On March 18, 2022, Advanced filed its Answer to the Third-Party Complaint, and the period of fact discovery began shortly thereafter. *See* Adv. Ans., ECF No. 23; Sched. Order, ECF No. 27. At the close of fact discovery, both Target and Kimco Realty moved for summary judgment. *See* Target MSJ, ECF No. 36; Kimco MSJ, ECF No. 37. Following a series of responses and replies, the motions are ready for review. *See* Resp. Target, ECF No. 41; Resp. Kimco, ECF No. 40; Target Reply, ECF No. 42; Kimco Reply, ECF No. 43.

## III. UNDISPUTED MATERIAL FACTS

On January 8, 2022, Pukanecz fell on ice in the parking lot in front of a Target store in the Westmont Plaza Shopping center. *See* Pls. Stmt. Mat. Facts (PSMF) ¶ 4, ECF No. 41-1; Target's Resp. Stmt. Facts (TRSF) ¶ 4, ECF No. 42. Pukanecz testified that he slipped on a thin coating of ice on black macadam, only noticing the ice was there after he had fallen. *See* PSMF ¶ 7; TRSF ¶ 7. The Westmont Plaza Shopping Center where Pukanecz fell was owned by Kimco Westmont 614, Inc, a subsidiary of Kimco Realty. *See* Pls. 2nd Stmt. Mat. Facts (PSMF2) ¶ 4, ECF No. 40-1; Kimco Resp. Stmt. Facts (KRSF) ¶ 4, ECF No. 43. Kimco Westmont entered

into a contract with Advanced for the purpose of seasonal snow removal services.  *See* Resp. Kimco at Exhibit C ("Snow Removal Contract"), ECF No. 40-6.

## IV. LEGAL STANDARDS

### A. Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *See id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts").  The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.  The court must consider the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## V. ANALYSIS

Both Target and Kimco Realty move for summary judgment in their favor on all claims. For its part, Target argues that it had neither an ownership-related duty nor any contractual duty to maintain the parking lot in front of the retail space it leased. In support of its motion, Kimco Realty argues that it did not own the subject property, nor did it have any direct involvement in the snow removal process on the subject property, such that it could be rendered liable for the acts of its subsidiary, Kimco Westmont. Each motion is addressed in turn below. Ultimately, Target's motion for summary judgment is granted, and Kimco Realty's motion for the same is denied.

### A. Target's Motion for Summary Judgment

In its motion for summary judgment, Target argues that it had no duty to maintain the parking lot, as it did not own or lease the parking lot and it did not have any contractual duty to maintain it. Target asserts that the undisputed facts indicate that Kimco Westmont was responsible for maintenance of the parking lot, and Target had not assumed a duty to maintain it, contractually or otherwise. In response, Pukanecz argues that Target should have been aware of ice on the surface of the parking lot in front of its store, and therefore, Target should have been under a duty to remedy it. Following a review of the record and briefing, this Court concludes that no reasonable jury could find Target had a duty to maintain the subject parking lot.

In *Leary v. Lawrence Sales Corporation*, the Pennsylvania Supreme Court addressed the question of whether the tenant or landlord bears responsibility for maintaining these sorts of delineated common areas. *See* 275 A.2d 32, 34 (Pa. 1971). There, plaintiff had slipped and fallen on a hotdog left on the floor of a farmer's market leased to multiple tenants. *See id.* The

area in which the plaintiff fell was a common area, as opposed to a portion specifically leased to the tenant.  *See id.*  The Pennsylvania Supreme Court ultimately concluded that

> where the owner of real estate leases various parts thereof to several tenants, but retains possession and control of the common passage-ways and aisles which are to be used by business invitees of the various tenants, the obligation of keeping the common aisles safe for the business invitees is imposed upon the landlord and not upon the tenants, in the absence of a contrary provision in the lease or leases . . . .

*See id.* (citing *Lopez v. Gukenback*, 137 A.2d 771 (Pa. 1958); *Lewin v. Pauli*, 19 Pa. Super. 447 (1902)).

Moreover, the *Leary* court was invited to treat shopping centers, like that which Target leased here, as different from other establishments.  *See id.*  In other words, the court was provided an opportunity to adopt a standard which held tenants liable for the maintenance of shopping center common areas, as opposed to landlords.  Notwithstanding, the court declined to do so, finding shopping centers were not so different from the previously treated establishments so as to warrant a different standard for apportioning maintenance liability.  *See id.*; *see also Morgan v. Bucks Assocs.*, 428 F. Supp. 546, 549 (E.D. Pa. 1977) (indicating *Leary*'s standard of liability apportionment is "long established" law in Pennsylvania).

Pukanecz is correct that, under Pennsylvania law governing premises liability, a business invitee is owed the "highest duty of care."  *See Lerro v. Wal-Mart Stores, Inc.*, No. 08-993, 2009 WL 10684916, at *2 (E.D. Pa. July 14, 2009) (citing *Jones v. Three Rivers*, 394 A.2d 546, 552 (Pa. 1978)).  Notwithstanding, whether *Target* is the party who owes Pukanecz that duty is a separate question.  To show that Target had a duty to maintain the parking lot, Pukanecz must show that Target either owned or leased the parking lot, or otherwise assumed a contractual duty to maintain it.

Here, the undisputed facts indicate that Target did not own, or have a lease over, the subject parking lot, nor did Target assume a contractual duty to maintain it. Attached as Exhibit D to Target's motion is the lease agreement formed between Kimco Westmont and Target. *See* Mot. at Ex. D. The very terms of that lease agreement require Kimco Westmont, as the landlord, to "maintain, repair, replace, insure, and operate the Common Elements" of the subject shopping center. *See* Ex. D. at 7.1. The term "Common Elements" is defined to include "all parking areas." *See* Ex. D. at Schedule 1. Accordingly, the parking lot was left to the possession, and care, of Kimco Westmont, the landlord. Put another way, the terms of the lease agreement make clear that Target had no ownership-related or contractually-assumed duty to maintain the subject parking lot.

Therefore, in the absence of any duty imposed on Target to maintain the parking lot, by way of either ownership or contract, no reasonable jury could find Target liable for the injuries Pukanecz alleges. Accordingly, Target's motion for summary judgment is granted. Judgment is entered in Target's favor and against Pukanecz on all Counts.

### B.    Kimco Realty's Motion for Summary Judgment

Next, Kimco Realty moves for judgment in its favor on all claims against it. In particular, Kimco Realty claims that it did not own the subject property, and accordingly, it is not liable for incidents that occur thereon. Put another way, Kimco Realty asserts that any owner liability, to the extent it did exist, would lie with Kimco Westmont, the subsidiary to whom the property was deeded. *See* Kimco MSJ at Ex. C ("Deed"). Pukanecz disagrees, arguing that Kimco Realty is directly liable for the premises by virtue of its direct involvement with and

operation of the subject property.[1]   For the reasons set forth below, the Court concludes that there is a genuine dispute of material fact that precludes summary judgment on this issue.

As the Supreme Court indicated in *United States v. Best Foods*, "derivative liability cases are to be distinguished from those in which 'the alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management' and 'the parent is directly a participant in the wrong complained of.'"  *See* 524 U.S. 51, 65–66 (1998) (quoting Douglas & Shanks, *Insulation from Liability Through Subsidiary Corporations*, 39 YALE L.J. 193 (1929) (distinguishing between direct and derivative liability in the context of Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) litigation).  To illustrate that very principle, the Court posited that "[t]he fact that a corporate subsidiary happens to own a polluting facility operated by its parent does nothing, then, to displace the rule that the parent 'corporation is [itself] responsible for the wrongs committed by its agents in the course of its business . . . .'  *See id.* (quoting *Mine Workers v. Coronado Coal Co.*, 259 U.S. 344, 395 (1922)).

In *Ferrell v. Harvard Industries, Inc.*, this District applied that same principle outside of the CERCLA context, finding Harvard Industries, a parent corporation, could be held liable for actions that took place at a subsidiary facility.  There, Judge Van Antwerpen, writing then for the Eastern District of Pennsylvania, stated,

> it has long been acknowledged that parents may be 'directly' liable for their subsidiaries' actions when the 'alleged wrong can seemingly be traced to the parent through the conduit of its own personnel and management,' and the parent has interfered with the subsidiary's operations in a way that surpasses the control exercised by a parent as an incident of ownership.

*See id.* (quoting *Pearson*, 247 F.3d at 487).

---

[1]   In his response to Kimco Realty's motion, Pukanecz indicates that his claim against Kimco Realty is not rooted in derivative liability—or corporate veil piercing—but rather, it is one of direct liability, based on a theory of Kimco Realty's direct involvement with the subject property.  *See* Resp. Kimco at 5.

Judge Van Antwerpen concluded that Harvard Industries, as the parent company, "was specifically responsible for the labor practice at issue in the litigation." *See id.* Thus, the court found Harvard Industries could be held directly liable for the alleged discriminatory actions that took place at the subsidiary facility. *See id.* Accordingly, with respect to the matter before this Court, Pukanecz may prevail on his direct liability claim against Kimco Realty to the extent that he can trace the alleged wrongdoing to Kimco Realty through the conduit of its own personnel and management.

Here, genuine disputes of material fact preclude entry of summary judgment in Kimco Realty's favor on the issue of its direct involvement with the Kimco Westmont property and the injuries caused to Pukanecz. Foremost, the property manager of the subject shopping center, Ryan Storrie, testified at his deposition that he was an employee of Kimco Realty, not Kimco Westmont. *See* Resp. Kimco at Ex. B 5:20-21 ("Storrie Depo."), ECF No. 40-5. Additionally, Storrie testified that he was at the subject property on a weekly basis. *See id.* 11:25–12:5. Finally, Storrie testified that he had direct involvement in "complaints" by tenants regarding snow and ice removal from the subject property. *See id.* 13:8-15. Based on these facts, a reasonable jury could find that Storrie, an employee of Kimco Realty, had direct and regular involvement with the subject property, including the very condition that allegedly caused Pukanecz injuries—namely snow and ice removal on the property.

In addition to the testimony provided by Storrie, the documentary evidence also raises disputes of fact regarding Kimco Realty's direct involvement with the property. In particular, the contract with Advanced for snow and ice removal at the subject property refers to Kimco Realty at multiple junctures. For example, the contract notes that "Kimco Realty Corporation is an equal opportunity employer . . ." and does not mention whether Kimco Westmont shares that

same status.  *See id.* at Ex. C, pg. 3, ECF No. 40-6.  The contract then provides Advanced with two direct points of contact for "questions regarding appropriate business conduct or to report a matter of concern."  *See id.*  These contacts are Leah Landro, the Vice President of Human Resources at Kimco Realty, and Bruce Rubenstein, General Counsel at Kimco Realty.  *See id.*  The contract additionally requires that Advanced agree to indemnify Kimco Realty against certain losses, *see id.* at 2, and agree to place Kimco Realty on Advanced's general liability and automotive liability policies, *see id.* at 6.

For its part, Kimco Realty disputes direct involvement.  In particular, Kimco Realty asserts that Plaintiff fails to allege any action or inaction by Storrie that resulted in the alleged injury.  Moreover, Kimco Realty asserts that the provisions in the snow removal contract that regard Kimco Realty are simply boilerplate language.

On these facts, a reasonable jury could find that Kimco Realty was directly involved in the snow removal at the Kimco Westmont property, through conduit of its management and personnel, such that it may be held directly liable.  Of course, in the alternative, a reasonable jury may also find that Kimco Realty did not exercise such direct control, and thus, may not be held liable under these circumstance.  Notwithstanding, because that determination rests on the resolution of these disputed facts, this Court may not dispose of this question at this stage of the litigation.

Accordingly, Kimco Realty's motion for summary judgment is denied, and Pukanecz's claims against Kimco Realty may proceed to trial.

## VI.  CONCLUSION

Following a review of Target's motion for summary judgment, the motion is granted. Target had no duty, through ownership or by contract, to maintain the subject parking lot, and accordingly, no reasonable jury could find it liable for Pukanecz's injuries.

After a review of Kimco Realty's motion for summary judgment, the motion is denied. Genuine disputes of material fact preclude this Court from deciding, as a matter of law, whether Kimco Realty was directly engaged with the property such that it could be held directly liable for Pukanecz's injuries.  Rather, that decision is best left to the fact finder at trial.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge
